Argued and submitted July 30, affirmed September 5, reconsideration denied November 28, 1990, petition for review denied January 3, 1991 (311 Or 60)

In the Matter of the Compensation of
Gale J. Warren, Claimant.

## GEORGIA-PACIFIC CORPORATION,
*Petitioner,*

*v.*

Gale J. WARREN,
*Respondent.*

(87-15662; CA A63134)

796 P2d 1246

Jerry K. Brown, McMinnville, argued the cause for petitioner. With him on the brief was Cummins, Brown, Goodman, Fish & Peterson, P.C., McMinnville.

David C. Force, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Employer seeks review of an order of the Workers' Compensation Board affirming the referee's decision that claimant's carpal tunnel syndrome is compensable.

The Board's opinion explains the issue in this case:

"The record contains relevant medical opinions from treating orthopedic surgeon Schachner and Dr. Nathan, hand surgeon. The opinions of both medical experts support the following findings and conclusions. First, claimant experienced no difficulties with her hands or wrists before she began working for the employer. Second, claimant's work with the employer was the major contributing cause of her current bilateral wrist and hand *symptoms.* Third, those symptoms are attributable to 'carpal tunnel syndrome,' defined as a complex of symptoms resulting from compression and oxygen deprivation of the median nerve in the carpal tunnel.

"Accordingly, if 'carpal tunnel syndrome' is the 'occupational disease' in this case, claimant has demonstrated a compensable disease. However, the employer disagrees with this characterization of claimant's disease. It relies, instead, on an alternative definition put forth by Dr. Nathan, who performed an independent medical examination in September 1987. If we accept Dr. Nathan's opinion, claimant has not demonstrated a compensable occupational disease. He defined claimant's disease as the slowing of the median nerve identified in electrodiagnostic tests. He further opined that this nerve slowing was entirely ideopathic in origin and was not worsened by claimant's work activity.

"The Referee rejected Dr. Nathan's opinion and concluded that claimant's carpal tunnel syndrome was a compensable occupational disease. We agree. In order to be compensable, an occupational disease must require treatment or result in disability or death. ORS 656.804 and *former* 656.005(8)(a). Claimant is not seeking treatment for a slowing of the median nerve but for her clinical condition, characterized as carpal tunnel syndrome. Dr. Nathan concedes that treatment of claimant's median nerve slowing would be inappropriate in the absence of symptoms, *i.e.*, until the onset of carpal tunnel syndrome. Furthermore, when treatment is provided, it does nothing to correct the underlying slowing of the median nerve but merely relieves symptoms by allowing more blood and oxygen to reach the nerve. Finally, claimant's condition is disabling because of her symptom complex, not the slowing of her median nerve.

"After considering these factors, we conclude that claimant's carpal tunnel syndrome is a compensable occupational disease." (Emphasis in Board's.)

Employer contends, essentially, that the Board had no choice but to accept Nathan's opinion that claimant's underlying condition is ideopathic and has not been affected by her employment. According to Nathan, his research shows that, with carpal tunnel disease, there is a distinction between the underlying condition, which Nathan described as "entrapment neuropathy," and the syndrome, which occurs when the condition becomes symptomatic. Nathan testified that he determined, from the location of claimant's nerve lesion, that, although claimant's symptoms probably were caused by her work activity, her underlying neuropathy was ideopathic. Dr. Schachner, claimant's treating neurosurgeon, was of the opinion that claimant's employment was the cause of her carpal tunnel syndrome.

Employer argues that, in the light of Nathan's extensive research, experience and explanation concerning the nature of carpal tunnel syndrome and claimant's condition, the Board's finding that Schachner's opinion is more persuasive is not supported by substantial evidence. Additionally, it contends that, in the light of Nathan's uncontroverted opinion that the underlying condition is separate from its symptoms and that it was not caused or made worse by the employment, the Board erred as a matter of law in concluding that the syndrome is the disease and that it is compensable. *See Weller v. Union Carbide Corp.,* 288 Or 27, 602 P2d 259 (1979).

As the Supreme Court suggested in *Weller,* 288 Or at 33, sometimes the medical evidence will support the conclusion that the symptoms for which compensation is sought *are* the disease. Here, even accepting Nathan's testimony that claimant has an underlying condition, "entrapment neuropathy," that is ideopathic in origin, claimant seeks compensation for carpal tunnel syndrome, a complex of symptoms resulting from compression and oxygen deprivation of the median nerve in the carpal tunnel. In the opinion of both Nathan and Schachner, the syndrome was brought on by claimant's work activity with employer. Schachner stated that claimant's work is the etiologic source of her syndrome. He

attributed no part of it to a preexisting condition and made no distinction between carpal tunnel syndrome and an underlying carpal tunnel disease. We conclude that the Board's finding that the syndrome is the compensable disease is supported by substantial evidence and that its conclusion is supported by its findings.

Affirmed.